ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of -- ) | |
| ) | |
| Cooper/Ports America, LLC ) | ASBCA Nos. 61348, 61351 |
| ) | 61536, 61537 |
| Under Contract No. HTC711-15-D-R036 ) | |

APPEARANCES FOR THE APPELLANT:    W. Barron A. Avery, Esq.
                                  William T. DeVinney, Esq.
                                  William B. O'Reilly, Esq.
                                  Katherine L. McKnight, Esq.
                                    Baker & Hostetler LLP
                                    Washington, DC

APPEARANCES FOR THE GOVERNMENT:   Jeffrey P. Hildebrant, Esq.
                                    Air Force Deputy Chief Trial Attorney
                                  Lt Col Sondra Bell Nensala, USAF
                                  Caryl A. Potter III, Esq.
                                  Danielle A. Runyan, Esq.
                                  Lawrence M. Anderson, Esq.
                                    Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE SWEET
ON THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

These appeals involve the government's purported exercise of an option to extend the terms of a contract with appellant Cooper/Ports America, LLC (C/PA) to provide stevedoring services. C/PA moves for summary judgment, arguing that the government's purported exercise of the option was ineffective because the government failed to provide a timely and proper preliminary notice of its intent to exercise the option (preliminary notice of intent). The government opposes that motion, and cross-moves for summary judgment, arguing that it provided a timely and proper preliminary notice of intent. Because C/PA cannot genuinely dispute that the government provided a timely and proper preliminary notice of intent, we deny C/PA's motion for summary judgment, and grant the government's cross-motion for summary judgment.[1]

---

[1] C/PA also moves for leave to file a sur-reply. Because the government raises new arguments in its reply, we grant that motion.

<u>STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTIONS</u>

1. On January 28, 2015, the United States Transportation Command (government) awarded Contract No. HTC711-15-D-R036 (036 contract) to Shippers Stevedoring Co. (Shippers) to provide stevedoring and related terminal services at ports in the Southeast United States (R4, tabs 1, 4).[2]

2. The 036 contract provided for one base year, and four option years (OYs) (R4, tab 4 at 4-7). As modified, the base year ran from July 1, 2015, through June 30, 2016, and each OY would run from July 1 through June 30 (R4, tab 8).

3. The 036 contract contained Federal Acquisition Regulation (FAR) 52.217-8, OPTION TO EXTEND SERVICES (NOV 1999) clause, which allowed the government to extend the contract up to 6 months beyond the end of the contract period, and did not require the government to provide a preliminary notice of intent (the clause only required written notice to the contractor no later than 30 calendar days before the contract expires) (R4, tab 4 at 11). The 036 contract also contained FAR 52.217-9, OPTION TO EXTEND THE TERM OF THE CONTRACT (MAR 2000) clause, which stated that "[t]he Government may extend the term of this contract by written notice to the Contractor within 15 calendar days; provided that the Government gives the Contractor a preliminary written notice of its intent to extend at least 60 days before the contract expires" (*id.*).

4. On April 28, 2016, the government sent Shippers a formal preliminary notice of intent to exercise OY1, which stated that "[i]n accordance with FAR 52.217-9, Option to Extend the Term of the Contract, you are hereby given preliminary notice of the Government's intent to extend the term of the contract through 30 June 2017" (app. supp. R4, tab 67). The government subsequently exercised OY1 (R4, tab 9).

5. On December 22, 2016, the government issued a modification, which incorporated a novation agreement substituting C/PA for Shippers as the contractor (R4, tab 10).

6. In early 2017, C/PA's Chris Lewis emailed William Seamon, the contracting officer (CO), to request contract modifications due to C/PA's increased labor costs (app. mot., exs. D-E). On January 27, 2017, Mr. Lewis emailed the CO inquiring, "[h]ave you given any additional thought to the best plan to move forward regarding the inequity of the current contract?" (R4, tab 42).

---

[2] Unless otherwise indicated, all citations to the Rule 4 file are to the Rule 4 file in ASBCA No. 61348.

7. The CO responded on January 31, 2017 (January email)—about three months before the deadline for providing preliminary notice of intent (R4, tabs 11, 17, 42). The response stated that:

> The Government intends to exercise options at awarded rates on contracts HTC711-15-D-R036 and HTC711-15-D-R037. With this, the Government expects Cooper/Ports America to continue performing per the terms and conditions of the contract.

(R4, tab 42)[3]

8. The CO testified that he intended the January email to unequivocally notify C/PA that the government intended to exercise the OY2 option, but that he also intended to follow-up with an official formal preliminary notice of intent. During his deposition, the CO gave the following answers to the following questions:

> Q:     ...[D]id you intend for [the January email] to be the preliminary notice?...
>
> A:     Did I intend for [the January email] to be the preliminary notice. Is that the question?
>
> Q:     That's the question, yeah. That's the question.
>
> A:     No.
>
> Q:     Why not?...
>
> ....
>
> A:     What [the January email] was was a response to a series of communications from...Cooper/Ports America....providing feedback...that an inability to perform was pending and that "You guys better get ready because we're not going to be here".... So I got this E-mail from Chris, and in an attempt to indicate unequivocally that we

---

[3] Contract No. HTC711-15-D-R037 (037 contract) was a different contract with C/PA and its predecessor to provide stevedoring services at ports along the Gulf Coast (R4, tab 39). On February 1, 2017, the government sent C/PA a formal preliminary notice of intent for the 037 contract (app. supp. R4, tab 68).

intended to exercise options at the current terms and conditions, I sent this E-mail. That's why this E-mail was sent.

> Q: But you didn't intend for this to be the preliminary notice?

> ....

> A: Yes, I did not intend for this to be an official preliminary notice.

(App. mot., ex. A at 113-15) The CO also gave the following answers to the following questions:

> Q: ...[D]o you think [the January] E-mail constitutes preliminary notice of an intent to exercise an option on the contract?

> A: Yes.

> Q: Okay. Why is that?

> A: Because it specifically states that the government intends to exercise options at award rates on both contracts....

(Gov't resp., ex. G-3 at 108)

9. Under the FAR 52.217-9 clause, the deadline for providing preliminary notice of an intent to exercise the OY2 option was May 1, 2017—60 days before OY1 expired on June 30, 2017 (R4, tab 4 at 11, tab 17).

10. On May 3, 2017—three days after that deadline—the government sent C/PA a formal memorandum notifying C/PA that, "[i]n accordance with FAR 52.217-9, Option to Extend the Term of the Contract, you are hereby given preliminary notice of the Government's intent to extend the term of the [036] contract through 30 June 2018" (formal preliminary notice of intent) (R4, tab 17).

11. C/PA responded on June 9, 2017, that the preliminary notice of intent was not timely, and therefore that the 036 contract was set to expire on June 30, 2017 (app. supp. R4, tab 69).

4

12. On June 13, 2017, the government issued a modification, purporting to exercise OY2. The government explained that it believed that the January email constituted a preliminary notice of intent. (R4, tab 63) C/PA responded on June 15, 2017, with a letter stating that C/PA believed the modification was invalid due to an untimely preliminary notice of intent, but that C/PA would continue to perform under protest at the government's direction (R4, tab 21).

13. Beginning on July 26, 2017, C/PA filed a series of claims regarding the purported ineffective option exercise (ASBCA No. 61348 R4, tab 22; ASBCA No. 61351 R4, tab 23; ASBCA No. 61536 R4, tab 1; ASBCA No. 61537 R4, tab 21).[4] The government either issued written denials of those claims, or there were deemed denials (R4, tab 23; ASBCA No. 61351 R4, tab 22).

14. These appeals followed.

## DECISION

### I. The Standards for Summary Judgment

We grant summary judgment if a moving party has shown that there are no genuine issues of material fact, and it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A non-movant seeking to defeat summary judgment by suggesting conflicting facts must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, if the non-moving party carries the burden of proof at trial for elements of its case and fails to provide such proof, the moving party is entitled to summary judgment. *Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994). In deciding summary judgment motions, we do not resolve controversies, weigh evidence, or make credibility determinations. *Liberty Lobby*, 477 U.S. at 255. Moreover, we draw all reasonable inferences in favor of the non-movant. *Id.*

### II. The January Email was a Proper Preliminary Notice of Intent

The government is entitled to judgment as a matter of law because C/PA cannot genuinely dispute that the January email was a proper preliminary notice of intent. The parties do not—and could not—dispute that the May 3, 2017 formal

---

[4] In ASBCA No. 61348, appellant seeks an interpretation of the contract and a declaration that the exercise of OY2 was ineffective, the contract expired, and C/PA was entitled to discontinue performance. ASBCA Nos. 61351, 61536 and 61537 are monetary claims resulting from the alleged improper exercise of OY2.

preliminary notice of intent was untimely, or that the January email was timely (SOF ¶¶ 7, 9-10). Thus, the only issue in these appeals is whether the January email was a proper preliminary notice of intent. It is the government's burden to prove that the January email was a proper preliminary notice of intent. *In re Griffin Services, Inc.*, ASBCA Nos. 52280, 52281, 02-2 BCA ¶ 31,943 at 157,802. A preliminary notice of intent "must be unqualified, absolute, unconditional, unequivocal, unambiguous, positive, without reservation, and according to the terms or conditions of the option." *Technical Services Corp.*, ASBCA Nos. 36505, 37548, 93-1 BCA ¶ 25,310 at 126,095; *see also White Sands Constr., Inc.*, ASBCA Nos. 51875, 54029, 04-1 BCA ¶ 32,598 at 161,308; *United Food Services, Inc.*, ASBCA No. 43711, 93-1 BCA ¶ 25,462 at 126,819. In determining whether a preliminary notice of intent is proper, we look at the substance of the notice; not its form. *Mills Mfg. Corp.*, ASBCA No. 10416, 66-1 BCA ¶ 5450 at 25,531; *Contel Page Services, Inc.*, ASBCA No. 32100, 87-1 BCA ¶ 19,540 at 98,735.

Here, the option clause merely required that "the Government give[] the Contractor a preliminary written notice of its intent to extend at least 60 days before the contract expires" (SOF ¶ 3). C/PA cannot genuinely dispute that, in accordance with that clause, the January email unambiguously, absolutely, and positively provided preliminary written notice of the government's intent to extend at least 60 days before the contract expired on May 1, 2017, by stating on January 31, 2017, that "[t]he Government intends to exercise options at awarded rates on contract[] HTC711-15-D-R036" (SOF ¶ 7). Nor did the January email impose any qualifications, conditions, or reservations upon the exercise of the option (*id.*). Therefore, the January email was a proper preliminary notice of intent. *Technical Services*, 93-1 BCA ¶ 25,310 at 126,095; *White Sands Constr.*, 04-1 BCA ¶ 32,598 at 161,308; *United Food Services*, 93-1 BCA ¶ 25,462 at 126,819.

None of C/PA's arguments raise a genuine issue of material fact. First, C/PA points to the CO's deposition testimony, which C/PA characterizes as indicating that the CO did not intend for the January email to constitute a preliminary notice of intent (app. mot. at 11). As an initial matter, in order to discern the parties' intent, we first look to the plain meaning of contract documents. *Barron Bancshares, Inc. v. United States*, 366 F.3d 1360, 1373 (Fed. Cir. 2004); *TEG-Paradigm Environmental, Inc. v. United States*, 465 F.3d 1329, 1338 (Fed. Cir. 2006). If that language is unambiguous, we cannot use extrinsic evidence to vary that language. *Id.* As discussed above, the January email unambiguously expressed that "[t]he Government intends to exercise [the] options" (SOF ¶ 7). Therefore, we may not resort to extrinsic evidence—such as the CO's deposition testimony—to vary that plain language.

Even if we were to examine the CO's deposition testimony, it does not raise a genuine issue of material fact. Read together, the CO's testimony that "I did not intend for [the January email] to be an <u>official</u> preliminary notice," and that he sent

6

the January email in "an attempt to indicate unequivocally that we intended to exercise options" establishes that the CO intended the January email to unequivocally notify C/PA that the government intended to exercise the OY2 option, but that he also intended to follow-up with an official formal preliminary notice of intent (SOF ¶ 8 (emphasis added)).[5] The mere fact that the government intended to subsequently formalize what it already had accomplished by issuing a formal preliminary notice of intent does not negate the fact that the more informal earlier preliminary notice of intent was effective because "[d]elay in the formal documentation of action previously taken is not uncommon in Government procurement.... [N]ot infrequently formality follows fact." *Mills*, 66-1 BCA ¶ 5450 at 25,531. The dispositive fact is that the more informal earlier preliminary notice unequivocally and unambiguously communicated in writing an intent to exercise OY2. *Id.* Thus, the CO's testimony that he intended to issue a subsequent formal preliminary notice of intent does not genuinely undermine the conclusion that the more informal January preliminary notice of intent was effective.

Second, C/PA argues that reading the January email in the context of the C/PA email to which the government was responding demonstrates that the January email was simply an expression of an expectation that C/PA continue to perform at the contract prices (app. mot. at 12-14). C/PA is correct that the January email expressed an expectation that C/PA continue to perform at the contract prices (SOF ¶ 7). However, the January email also stated that "[t]he Government intends to exercise options at awarded rates" (*id.* (emphasis added)). Thus, the January email both communicated the government's expectation that C/PA continue to perform at the contract prices, and that the government intended to exercise the option (*id.*).

Third, C/PA argues that the January email was ambiguous because it was too brief, too early, and omitted information—namely a "preliminary notice" title, reference to the specific contract to which it applied, and the option year the government intended to exercise (app. mot. at 15-18). However, nothing in the option clause required that the preliminary notice of intent be a particular length, sent after a particular date, or contain a particular title (SOF ¶ 3). Therefore, C/PA's complaints about the brevity, timing, and lack of a title improperly elevate form over substance. *Mills*, 66-1 BCA ¶ 5450 at 25,531; *Contel Page Services*, 87-1 BCA ¶ 19,540 at 98,735.

Likewise, nothing in the option clause required that the preliminary notice of intent identify the option year the government intended to exercise (SOF ¶ 3). On the

---

[5] The CO's testimony that he thinks that the January email constitutes preliminary notice of intent because it specifically stated that the government intends to exercise the option corroborates the above reading of the CO's testimony (SOF ¶ 8).

contrary, in interpreting plain meaning, the language "must be given that meaning that would be derived from the contract by a reasonable intelligent person acquainted with the contemporaneous circumstances." *Hol-Gar Mfg. Corp. v. United States*, 351 F.2d 972, 975 (Ct. Cl. 1965). Here, a reasonably intelligent contractor would understand that a preliminary notice of intent issued during OY1 applied to OY2.

Moreover, C/PA's assertion that the January email did not identify the specific contract to which it applied is incorrect. The January email stated that "[t]he Government intends to exercise options at awarded rates on contracts HTC711-15-D-R036 and HTC711-15-D-R037" (SOF ¶ 7 (emphasis added)). The plain meaning of the word "and" is conjunctive, such that the preliminary notice of intent applied to both the 036 and 037 contracts. *Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 957 (Fed. Cir. 2014); *Vogel Fertilizer Co. v. United States*, 634 F.2d 497, 501 (Ct. Cl. 1980).

Fourth, C/PA argues that the prior course of dealings—namely the fact that the formal preliminary notice of intent to Shippers for OY1 contained additional information—engendered an expectation that future notices would contain the same information (app. mot. at 18-20). However, this argument is not persuasive. "A course of dealing is a sequence of previous conduct between the parties to an agreement which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions." *T&M Distributors, Inc.*, ASBCA No. 51405, 00-1 BCA ¶ 30,677 at 151,509 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 223 (1979)); *see also Int'l Tel. and Tel. ITT Def. Comm's Div. v. United States*, 453 F.2d 1283, 1290 (Ct. Cl. 1972). "Justifiable reliance on a prior course of dealing requires proof of the same contracting agency, the same contractor, and essentially the same contract provisions." *T&M Distributors*, 00-1 BCA ¶ 30,677 at 151,509. Under *T&M Distributors*, C/PA may not rely upon evidence of a prior course of dealing regarding OY1's preliminary notice of intent because that dealing was with a different contractor—namely Shippers (SOF ¶ 4). Even if it could, C/PA could not fairly expect that the government would exercise an option in the exact same manner each time. *Freightliner Corp. v. Caldera*, 225 F.3d 1361, 1365 (Fed. Cir. 2000) (holding that the mere fact that, in their prior course of dealing, the parties had negotiated prior to the government exercising an option did not require the government to do so in every case).

Fifth, C/PA argues that the January email was an invalid preliminary notice of intent because it violated FAR 17.207(g) by failing to cite the option clause as authority (app. mot. at 20-21).[6] That argument fails because, by its plain terms,

---

[6] C/PA also asserts that the failure to cite the option clause was prejudicial because, absent such a citation, C/PA could not know if the preliminary notice of intent evidenced an intent to exercise an option pursuant to FAR 52.217-8 or FAR 52.217-9 (app. mot. at 15 n. 4). However, since FAR 52.217-8 allows the

8

FAR 17.207(g) only applies to "[t]he contract modification or other written document which notifies the contractor of the exercise of the option," and not to the preliminary notice of the intent. To adopt C/PA's argument, we would have to rewrite the regulation to add the phrase "or preliminary written notice of an intent to exercise the option," which we cannot do. *Newport News Shipbuilding and Dry Dock Co. v. Garrett*, 6 F.3d 1547, 1558 (Fed. Cir. 1993). Because the January email was a preliminary notice of intent, and not a modification or other written document which notified C/PA of the exercise of the option, FAR 17.207(g) did not require that the January email cite the option clause as authority.

C/PA attempts to avoid the plain language of FAR 17.207(g) by citing our observation that "[t]he preliminary notice is an integral component of the process by which the government binds the contractor to another contract term." *White Sands Constr.*, 04-1 BCA ¶ 32,598 at 161,308. It does not follow from that general observation that the preliminary notice of intent must comply with every regulatory requirement imposed upon a modification or other written document which notifies the contractor of the exercise of the option. That is particularly true with FAR 17.207(g)—which *White Sands* does not address—because the regulation specifically states that it applies to a modification or other written document which notifies the contractor of the exercise of the option, and omits any mention of the preliminary notice of intent. Therefore, C/PA cannot genuinely dispute that the January email was an effective preliminary notice of intent.

## CONCLUSION

For the reasons discussed above, C/PA's motion for summary judgment is denied, and the government's cross-motion for summary judgment is granted. Accordingly, we deny these appeals.

Dated:  March 12, 2019

*[signature]*

JAMES R. SWEET
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

---

government to extend services and did not require a preliminary notice of intent, a reasonably intelligent contractor in C/PA's position would have understood that the January email was a preliminary notice of intent pursuant to FAR 52.217-9 to exercise the options at awarded prices under the contract (SOF ¶ 3).

9

I concur                                        I concur


RICHARD SHACKLEFORD                             OWEN C. WILSON
Administrative Judge                            Administrative Judge
Acting Chairman                                 Vice Chairman
Armed Services Board                            Armed Services Board
of Contract Appeals                             of Contract Appeals


I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 61348, 61351, 61536, and 61537, Appeal of Cooper/Ports America, LLC, rendered in conformance with the Board's Charter.

Dated:


JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals