NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**WILLIAM KOOPMANN, WILLIAM C. BRASHEAR,**
*Plaintiffs-Appellants*

**CHARLES M. ADAMS, ET AL.,**
*Plaintiffs*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

_____

2021-1329

_____

Appeal from the United States Court of Federal Claims in No. 1:09-cv-00333-EMR, Judge Eleni M. Roumel.

_____

Decided: April 11, 2022

_____

WILLIAM KOOPMANN, Lovettsville, VA, pro se.

WILLIAM BRASHEAR, Dawsonville, GA, pro se.

JANET A. BRADLEY, Tax Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by JACOB EARL CHRISTENSEN, MICHAEL J. HAUNGS, DAVID A. HUBBERT.

———————————

Before LOURIE, REYNA, and CHEN, *Circuit Judges.*

PER CURIAM.

This is a tax refund case. Appellants William C. Brashear and William Koopmann (collectively, "Appellants") sued the government in the United States Court of Federal Claims ("the Claims Court") alleging that they are entitled to a refund of Federal Insurance Contribution Act ("FICA") taxes that were paid on deferred compensation that they never received. The Claims Court dismissed their claims. *Koopmann v. United States*, 150 Fed. Cl. 299 (2020) ("*Brashear Decision*"); *Koopmann v. United States*, 150 Fed. Cl. 290 (2020) ("*Koopmann Decision*"). For the reasons provided below, we *affirm* the decisions of the Claims Court.

## BACKGROUND

Appellants Brashear and Koopmann are retired United Airlines employees. Brashear retired in 2000 and was covered by United Airlines' non-qualified deferred compensation ("NQDC") plan for payment of retirement benefits. Koopmann retired in 2001 and was similarly covered. Under the plan, Brashear and Koopmann expected to receive compensation each year for the duration of their lives.

This case relates to FICA taxes that Brashear and Koopmann paid on compensation that they expected to receive under the United Airlines NQDC retirement plan. The Internal Revenue Code ("I.R.C."), codified in Title 26 of the United States Code, is the body of statutory law that governs the issues in this case. Also relevant are the regulations promulgated by the United States Department of the Treasury ("Treasury Department").

Normally, for purposes of FICA taxes, wages are considered received when they are paid by an employer to an employee, and wages are considered paid by the employer

when they are actually or constructively paid. *See Balestra v. United States*, 803 F.3d 1363, 1366 (Fed. Cir. 2015) (citing 26 C.F.R. § 31.3121(a)-2 and 26 C.F.R. § 31.3121(v)(2)-1(a)(1)). "However, some wages—including the deferred compensation at issue here—are treated differently under the 'special timing rule' for FICA tax purposes." *Id.* (citing § 31.3121(v)(2)-1(a)(2)).

The special timing rule, which is set forth in I.R.C. § 3121(v)(2), governs the timing of when "[a]ny amount deferred under a nonqualified deferred compensation plan shall be taken into account" as wages for FICA tax purposes. 26 U.S.C. § 3121(v)(2)(A). Under the special timing rule, an amount deferred is taken into account as wages for FICA tax purposes at some time before the actual payment of the compensation, and "shall not thereafter be treated as wages." 26 U.S.C. § 3121(v)(2)(B). Pursuant to the Treasury Department's regulations, the "amount deferred" is defined in terms of the "present value" of the deferred compensation, which is computed with reference to actuarial projections concerning life expectancy and a discount rate to account for the time value of money. *See* 26 C.F.R. § 31.3121(v)(2)-1(c)(2)(i).

The regulations set forth rules that govern the practicalities of this special timing rule. For example, there are rules that govern how and when the present value of the deferred compensation is to be calculated, how and when FICA taxes are to be withheld by an employer from an employee, and how and when the FICA taxes are to be paid and reported to the I.R.S. This court has in previous cases gone into more detail regarding this special timing rule and the regulations that govern it. *See, e.g.*, *Balestra*, 803 F.3d at 1366 (analyzing the meaning of "present value" under the regulations). But, importantly, in this case Appellants do not challenge the applicability of the special timing rule itself, nor do they dispute that United Airlines complied with the special timing rule when it withheld FICA taxes from them, paid those FICA taxes on their behalf, and

reported the FICA taxes to the IRS. It is therefore unnecessary to delve further into the language of the special timing rule in I.R.C. § 3121(v)(2) or the intricacies of its practical application.

For purposes of the instant appeal, it is sufficient to understand that under the special timing rule *FICA taxes are paid up front on money that is expected to be received in the future*. As the special timing rule was applied in this case, FICA taxes were withheld and paid on deferred compensation that Koopmann and Brashear expected to receive in periodic payments for years to follow. Specifically, for Brashear, United Airlines withheld and paid $5,047.98 in FICA taxes, which represented 1.45% (the then-applicable statutory FICA tax rate) of the $348,136.83 calculated present value of his deferred compensation retirement benefits. *See* S. Appx. 211. For Koopmann, United Airlines withheld and paid $6,017.88 in FICA taxes based on the $415,025.91 calculated present value of his deferred compensation. *See* S. Appx. 341.

Brashear and Koopmann never received much of that deferred compensation because United Airlines filed a Chapter 11 bankruptcy petition in 2002. Under a reorganization plan, which the Seventh Circuit Court of Appeals approved in 2006, United Airlines' obligation to pay deferred compensation to Brashear and Koopmann—and to many other similarly situated retired employees—was discharged. Thus, a portion of the retirement benefits that Brashear and Koopmann expected to receive—money on which FICA taxes had already been paid—was never paid to them.

On June 4, 2007, Brashear filed an administrative claim for refund at the Internal Revenue Service ("IRS") on IRS Form 843, purportedly relating to the tax period "from 04/28/2001 to 09/30/2005." S. Appx. 208. Koopmann filed his administrative claim on August 5, 2007 purportedly relating to the tax period "from 1/1/06 to 12/31/06." S. Appx.

339. Attachments to both Brashear's and Koopmann's refund claims made clear that they were seeking refunds for excess FICA taxes that were paid at the time of their retirements based on the then-present value of their deferred compensation. *See* S. Appx. 209–10, 340. The IRS denied their refund claims.

On May 26, 2009, Koopmann filed a lawsuit against the United States in the Claims Court. S. Appx. 97–113. As described by the Claims Court:

> The gravamen of Mr. Koopmann's claim is that because United Airlines withheld FICA tax from Mr. Koopmann based on a present value calculation of his retirement benefits at the time of his retirement, Mr. Koopmann effectively paid [Hospital Insurance] wage tax on wages he will never receive.

*Koopmann Decision*, 150 Fed. Cl. at 294.

Koopmann's complaint began by listing dozens of plaintiffs, all of whom were described as "retired career employees of United Airlines that belong to an online fraternal group, Retired United Pilots (RETUP), an online Message Board organization." *See* S. Appx. 97. Koopmann was the only plaintiff, however, who signed the complaint.

On July 27, 2009, the government moved for a more definite statement and requested that the court strike all purported plaintiffs other than Koopmann. In response to that motion, Koopmann obtained and submitted what he styled "Plaintiff Information" sheets from many of the plaintiffs. *See* S. Appx. 128–88. Each Plaintiff Information sheet contained basic contact information for the plaintiff, including address, email address, and phone number. *Id.* Each Plaintiff Information sheet also included certain limited information relevant to the specific plaintiff's refund claim, including the tax year for which the FICA tax claim was filed, the date and place the refund claim was filed, the amount claimed, and the IRS claim number. *Id.* The

Plaintiff Information sheet concluded with the plaintiff's signature, immediately below the statement: "I have read the Complaint, Motions and Answers and those are my allegations." *Id.* Brashear submitted one such Plaintiff Information sheet on September 3, 2009. *Brashear Decision*, 150 Fed. Cl. at 303.

The government moved to dismiss both Brashear's and Koopmann's claims for lack of jurisdiction. On September 30, 2020, the Claims Court granted the government's motions against Brashear and Koopmann on the basis that they had not filed timely refund claims. The court's decision with respect to each plaintiff was based on the "well-established rule that a timely sufficient claim for a [tax] refund is a jurisdictional prerequisite to a refund suit." Koopmann Decision, 150 Fed. Cl. at 294 (quoting Greene v. United States, 191 F.3d 1341, 1343 (Fed. Cir. 1999)).[1]

The Claims Court relied on a number of provisions of the Internal Revenue Code, including most importantly I.R.C. § 6511(a), which sets forth the time limitations for filing a federal tax refund claim:

> Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid.

---

[1] Much of the Claims Court's language and reasoning with respect to the timeliness of the refund claims is identical between the *Koopmann Decision* and the *Brashear Decision.* In the interest of simplicity, where the two decisions are substantively the same, we will cite only the *Koopmann* decision.

*See* 26 U.S.C. § 6511(a). The court summarized this law by stating that a refund claim "must be filed either: within three years of filing the return; or within two years of paying the tax, whichever is later." *Koopmann Decision*, 150 Fed. Cl. at 295 (citing I.R.C. § 6511(a)). With respect to the FICA tax, the court noted that "for purposes of section 6511's limitations period (1) a return for any quarterly period ending in a calendar year is considered filed on April 15 of the following year; and (2) a tax with respect to any such period is considered paid on the following April 15, so long as it was actually paid before that date." *Id.* (citing I.R.C. § 6513(c)). Based on the timing of each plaintiff's retirement and payment of FICA taxes on the deferred compensation, the court calculated the possible deadlines for each plaintiff to have filed an administrative claim for refund.

For Brashear, the court found that, pursuant to I.R.C. § 6513(c), United Airlines' quarterly returns for the year 2000 were considered filed as of April 15, 2001, *see* 26 U.S.C. § 6513(c)(1), and United Airlines quarterly tax deposits were considered paid as of April 15, 2001, *see* 26 U.S.C. § 6513(c)(2). *See Brashear Decision*, 150 Fed. Cl. at 304. Thus, pursuant to I.R.C. § 6511(a), the deadline for Brashear to file a refund claim for FICA taxes paid in connection with those returns was the later of April 15, 2003, or April 15, 2004. *Id.* The court noted that it was possible that United Airlines used credit transfers to satisfy Brashear's FICA tax liability for the fourth quarter of 2000 as late as April 29, 2002, which would make Brashear's latest possible deadline for a refund claim April 29, 2004. For Koopmann, the court conducted similar calculations, finding based on his retirement date in the year 2001 that the latest deadline for Koopmann to file a claim for refund was no later than April 15, 2005. *See Koopmann Decision*, 150 Fed. Cl. at 295.

As noted by the Claims Court, Koopmann and Brashear acknowledged that their refund claims were not

filed until 2007, which was after the 2004 and 2005 deadlines calculated based on I.R.C. § 6511(a). Koopmann and Brashear presented a number of arguments why their claims should nonetheless be permitted, but the Claims Court found each of their arguments unavailing. *Id.* at 295–96. Thus, because their administrative refund claims were untimely, the court dismissed their claims for lack of jurisdiction.

Koopmann and Brashear appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

On appeal, Koopmann and Brashear challenge the Claims Court's dismissal of their claims for lack of jurisdiction due to the untimeliness of their refund claims. Appellants contend that their failure to file administrative refund claims within the time limitations set forth in I.R.C. § 6511 should not bar their suit.

The government responds that the Claims Court correctly dismissed Appellants' claims for lack of jurisdiction because they failed to file timely administrative refund claims. In defending the court's decisions, the government contends that the Internal Revenue Code prohibits any suit for the recovery of any internal revenue tax "until a claim for refund or credit has been duly filed," 26 U.S.C. § 7422(a), and that the deadlines for filing such a claim for refund are clearly set forth in I.R.C. § 6511(a).

We review the Claims Court's dismissal of a complaint for lack of jurisdiction *de novo*. *Boaz Housing Auth. v. United States*, 990 F.3d 1373, 1380 (Fed. Cir. 2021). In order for a plaintiff's suit for a refund of federal taxes to fall within the Tucker Act's waiver of sovereign immunity, the plaintiff must meet the jurisdictional threshold for filing a refund claim under I.R.C. § 7422(a). *See United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 4 (2008). As summarized by the Supreme Court, "unless a claim for

refund of a tax has been filed within the time limits imposed by § 6511(a), a suit for refund . . . may not be maintained in any court." *Id.* (quoting *United States v. Dalm*, 494 U.S. 596, 602 (1990). This court has held that the "limitations period of § 6511(a) [is] jurisdictional in nature." *Greene*, 191 F.3d at 1343; *see also Sun Chem. Corp. v. United States*, 698 F.3d 1203, 1206 (Fed. Cir. 1983) ("It is a well-established rule that a timely, sufficient claim for a refund is a jurisdictional prerequisite to a refund suit."). While the Claims Court was required to liberally construe the filings of the *pro se* plaintiffs in this case, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the *pro se* plaintiffs still had the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988); *see also Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987) ("We agree that leniency with respect to mere formalities should be extended to a *pro se* party . . . . However, where the question is the calculation of the time limitations placed on the consent of the United States to suit, a court may not similarly take a liberal view of that jurisdictional requirement and set a different rule for *pro se* litigants.").

Over the course of this litigation and appeal, Appellants have framed their arguments in a number of different ways. Distilled to their essence, Appellants' arguments appear to set forth three reasons why the time limitations set forth in I.R.C. § 6511(a) should not bar the Claims Court from asserting jurisdiction over their claims. First, Appellants appear to argue that the time limitations in I.R.C. § 6511(a) categorically should not apply to refund claims for FICA taxes paid up front on deferred compensation. Second, Appellants argue that, even if the time limitations in I.R.C. § 6511(a) do apply generally to deferred compensation plans, the time limitations in this case should be applied on a year-by-year basis correlating with Appellants' receipt, or expected receipt, of each deferred compensation payment under their retirement plans. And third,

Appellants raise a number of equitable and constitutional doctrines to essentially challenge the unfairness of applying deadlines for their refund claims that expired before the occurrence of the event that formed the basis of their refund claims. We address each of Appellants' contentions in turn.

I

We first consider Appellants' contention that I.R.C. § 6511(a) should be categorically inapplicable to FICA taxes paid pursuant to the special timing rule. That contention is inconsistent with the Supreme Court's clear statement that the time limitations in I.R.C. § 6511(a) for filing an administrative refund claim "apply to '*any* tax imposed by this title.'" *Clintwood Elkhorn*, 553 U.S. at 7 (quoting *United States v. Brockamp*, 519 U.S. 347, 350 (1997)). Appellants fail to persuade us that the one tax at issue in this case—FICA tax paid up front on deferred compensation pursuant to the special timing rule—should somehow be exempt from that sweeping declaration from the Supreme Court.

Appellants highlight the words "in respect of which tax the taxpayer is required to file a return" in I.R.C. § 6511(a). They argue that because United Airlines—not Koopmann and Brashear—"was the taxpayer who filed the FICA tax return," the FICA tax at issue in this case falls outside the scope of the statutory language in I.R.C. § 6511(a). *See* Appellants' Informal Br. at 26–27. But this court rejected that argument in *Radioshack Corp. v. United States*, 566 F.3d 1358, 1361 (Fed. Cir. 2009), where we agreed with precedent from the United States Court of Claims holding that "§ 6511(a) was obviously intended to cover all taxes, whether or not a return is required, and its wording can easily carry that understanding since it expressly provides for the case where 'no return was filed by the taxpayer.'" *Id.* (quoting *Alexander Proudfoot Co. v. United States*, 454 F.2d 1379, 1382 n.7 (Ct. Cl. 1972)). Thus, irrespective of

who actually sent the money for FICA taxes to the IRS and filed the returns reporting the payment of the FICA taxes—*i.e.*, whether it was carried out by Koopmann and Brashear themselves sending the money to the IRS, or whether it was carried out through their employer, United Airlines, withholding the money—Appellants' refund claims for those FICA taxes are not exempted from the time limitations of I.R.C. § 6511(a).

At bottom, the Internal Revenue Code contains specific provisions that govern the treatment of "certain nonqualified deferred compensation plans," with a special timing rule that governs when the deferred wages are taken into account for FICA tax purposes. *See* 26 U.S.C. § 3121(c)(2)(A). The Treasury Department's regulations similarly convey the date on which "an amount deferred under a nonqualified deferred compensation plan is required to be taken into account as wages for FICA tax purposes," and the regulations specifically set forth a "nonduplication rule" under which the deferred compensation is not to be "treated as wages for FICA tax purposes at any time thereafter." 26 C.F.R. § 31.3121(v)(2)-1(a)(2). The Internal Revenue Code establishes the date on which those taxes are considered paid and the date on which the returns are considered filed, *see* 26 U.S.C. § 6513(c), and the time limitations in I.R.C. § 6511(a) are counted from those dates. Thus, any refund claim for recovery of the FICA tax imposed on Appellants' deferred compensation retirement benefits was subject to the time limitations set forth in I.R.C. § 6511(a), which the Supreme Court has noted are "set forth in 'unusually emphatic form.'" *Clintwood Elkhorn*, 553 U.S. at 7 (quoting *Brockamp*, 519 U.S. at 350).

## II

We next turn to the second reason Appellants offer for why I.R.C. § 6511(a) should not bar their claims. Appellants contend that, with respect to their deferred

compensation plans, the time limitations in I.R.C. § 6511(a) should apply yearly based on the timing of their receipt of each payment. *See* Appellants' Informal Br. at 23 ("All income is taxed on an annual basis. The Government can demand payment of taxes on income that was not reported in the year received, and taxpayers can seek refund of overpaid taxes in each year, and both are governed by a time statute that starts, each calendar year, on April 15th of the year following the year the income was received.").

We disagree with Appellants' argument because it is fundamentally at odds with the plain language of I.R.C. § 6511(a), which sets forth two possible time limitations, neither of which is based on the date on which the compensation is paid to the taxpayer. Rather, the limitations periods are counted from either the date that the return was filed or the date that the tax was paid to the IRS. *See* 26 U.S.C. § 6511(a).

In this case, each Appellant's deferred compensation was taken into account for FICA tax purposes upon his retirement, *see* 26 U.S.C. § 3121(v)(2), and for purposes of calculating the I.R.C. § 6511(a) deadlines the returns were considered filed and the taxes were considered paid on April 15 of the following year, *see* 26 U.S.C. 6513(c). For Brashear that date was April 15, 2001, and for Koopmann that date was April 15, 2002. Thus, notwithstanding what each Appellant chose to write on his IRS Form 843—Brashear wrote that the tax period was "from 04/28/2001 to 09/30/2005," *see* S. Appx. 208, and Koopmann wrote that the tax period was "from 1/1/06 to 12/31/06, *see* S. Appx. 339—it was on those dates in April 2001 and April 2002 that the I.R.C. § 6511(a) limitations periods began to run.

To be sure, Congress could have enacted a statute that contained a deadline for filing a refund claim that is counted beginning from when compensation is received.

But Congress did not enact such a statute, and it is not within the province of the courts to rewrite Congress's clearly worded statutes. *Newport News Shipbuilding & Dry Dock Co. v. Garrett*, 6 F.3d 1547, 1558 (Fed. Cir. 1993) ("This Court is empowered to rewrite neither statutes nor regulations, however unwise, nor does it have the information base nor expertise to do so effectively."). Under the statute, as written, the date when Brashear and Koopmann received each of their deferred compensation payments is irrelevant to the untimeliness of their refund claims.

## III

This leads us to Appellants' arguments based on unfairness. Again, Appellants have presented these arguments in a variety of ways throughout this litigation, but they essentially argue that the application of the deadlines in this case was unfair. Under the statutory language in I.R.C. § 6511(a), their deadlines to file refund claims expired no later than 2004 and 2005, respectively, but the reorganization plan that discharged United Airlines' obligation to pay their deferred compensation was not approved until 2006. Thus, they argue, it is unfair that by the time they had any reason to file refund claims, the limitations periods for them to do so had already expired.

The government contends Appellants waived these arguments by not raising them on appeal. *See* Appellee Resp. Br. at 12 n.4. We construe the arguments of *pro se* Appellants liberally, however, and we think Appellants have sufficiently preserved these arguments. *See, e.g.*, Appellants' Informal Br. at 9 ("Treasury application of the time statute intentionally violated Plaintiffs' constitutional rights to due process and equal protection of the Law."). Nevertheless, for the same reasons discussed by the Claims Court, we are not persuaded by Appellants' unfairness arguments.

As a general proposition, the Supreme Court has made clear that equitable considerations do not override Congress's judgment as to the time limitations for filing a tax refund claim. *See generally Dalm*, 494 U.S. at 610. Indeed, with respect to the federal tax system, the Supreme Court has stated that "[t]he nature and potential magnitude of the administrative problem suggest that Congress decided to pay the price of occasional unfairness in individual cases (penalizing a taxpayer whose claim is unavoidably delayed) in order to maintain a more workable tax enforcement system." *Brockamp*, 519 U.S. at 352–53.

More specifically, our precedent demonstrates that particular equitable doctrines are inapplicable to the time limitations in I.R.C. § 6511(a). For example, with respect to equitable tolling, this court has noted that under Supreme Court precedent, "the restrictions set forth in § 6511 for filing tax refund claims cannot be tolled for equitable reasons." *Boeri v. United States*, 724 F.3d 1367, 1370 n.3 (Fed. Cir. 2013) (citing *Brockamp*, 519 U.S. at 348). Likewise, there is no discovery rule with respect to the deadlines in I.R.C. § 6511(a); *i.e.*, the fact "that a taxpayer does not learn until after the limitations period has run that a tax was paid in error, and that he or she has a ground upon which to claim a refund, does not operate to lift the statutory bar." *Dalm*, 494 U.S. at 609 n.7; *see also Lovett v. United States*, 81 F.3d 143, 145 (Fed. Cir. 1996) (rejecting an argument that the limitations period should be tolled because the taxpayer was unaware that the tax was wrongfully collected).

Even with respect to the specific event that triggered the instant case—*i.e.*, United Airlines' bankruptcy reorganization plan that discharged its obligation to pay deferred retirement benefits—this court has already rejected arguments about the potential unfairness of strictly applying the language of the Internal Revenue Code and the Treasury Department's regulations. *See Balestra*, 803 F.3d at 1374 (finding that "one example of consequent unfairness"

does not override the Treasury Department's need for "simple, workable, and flexible rules when valuing future benefits"). To be clear, we agree with Appellants that our opinion in *Balestra* is not dispositive in the instant case because *Balestra* did not address any timeliness issues associated with administrative claims. And we also agree with the government that the Claims Court relied on *Balestra* solely for its alternative decisions that Koopmann and Brashear could not succeed on the merits of their claims.[2] We rely on *Balestra* simply to emphasize the point that we cannot prioritize potential discrete cases of unfairness to individual taxpayers over the workability and administrability of the federal tax system.

Like the Claims Court, we are not in a position on the record before us to determine whether the operation of the special timing rule in this case actually worked to benefit Koopmann and Brashear in the long run. *See id.* at 298 ("Indeed, Mr. Koopmann may have potentially benefitted from the application of the special timing rule in this case."). If the special timing rule worked to their disadvantage, we echo the sympathy that the Claims Court expressed. *See Koopmann Decision*, 150 Fed. Cl. at 295 ("While this Court sympathizes with Mr. Koopmann, . . . this Court is bound by statutes as passed by Congress and by Federal Circuit precedent, both of which mandate

---

[2]    As noted, the Claims Court dismissed Koopmann's and Brashear's claims for lack of jurisdiction. For Koopmann, the court also noted that even if it had jurisdiction, Koopmann's claims would nevertheless fail on the merits. *Koopmann Decision*, 150 Fed. Cl. at 298–99. And for Brashear, the court alternatively granted summary judgment in favor of the government. *Brashear Decision*, 150 Fed. Cl. at 307. Because we affirm the dismissals for lack of jurisdiction, we need not reach these alternative decisions.

dismissal of Mr. Koopmann's claim."). But, ultimately, to the extent this case illustrates that there may be a problem of unfairness in the way that the Internal Revenue Code operates with respect to taxes paid on deferred compensation retirement benefits when an employer later goes bankrupt, that would be a problem for Congress and the Treasury Department to address.

## CONCLUSION

We have considered Appellants' remaining arguments and we find them unpersuasive. Accordingly, the decisions of the Claims Court are *affirmed*.

## **AFFIRMED**

### COSTS

No costs.